UNITED STATES of America

v.

**Jeffrey A. BORISH, Samuel Ber Ginsberg, Paul E. Justice and Bernard Harry Krik.**

**Crim. No. 78–32.**

United States District Court,
E. D. Pennsylvania.

June 20, 1978.

Robert N. deLuca, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Steven B. Gross, Philadelphia, Pa., for Borish.

A. Charles Peruto, Philadelphia, Pa., for Ginsberg.

Stephen H. Serota, Philadelphia, Pa., for Justice.

Jordon R. Pitock, Philadelphia, Pa., for Krik.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Defendants Jeffrey A. Borish ("Borish"), Samuel Ber Ginsberg ("Ginsberg"), Paul E. Justice ("Justice"), and Bernard Harry Krik ("Krik") are charged in a 55-count indictment [1] with the making, or the aiding and abetting of the making, of materially false statements in FHA Form 2700b, the monthly Broker's Report of Disbursements and the accompanying invoices and payroll vouchers submitted to the United States Department of Housing and Urban Development ("HUD") with respect to services and supplies which were allegedly not performed or furnished by various contractors and with respect to salary payments to individuals for work allegedly not performed, in violation of 18 U.S.C. §§ 1010, 2. Presently before the Court are the following pretrial motions: (1) the motions of each defendant to dismiss the indictment because of preindictment delay, pursuant to Fed.R.Crim.P. 12(b)(1) and 48(b); (2) the motions of Borish, Justice and Krik for relief from prejudicial joinder of defendants, pursuant to Fed.R.Crim.P. 12(b)(5) and 14; (3) Ginsberg's motion for severance of offenses, pursuant to Fed.R.Crim.P. 12(b)(2) and 8(a); and, (4) the motions of Borish, Justice and Krik to regulate the order of proof at trial, pursuant to Fed.R.Crim.P. 12(b). For the reasons stated below, each of the defendants' motions will be denied.

Ginsberg, trading as Sherwood Realty Company ("Sherwood"), was under contract with HUD from March, 1975, through March, 1977, as an Area Management Broker responsible for the management and maintenance of various HUD-owned, multifamily properties in Philadelphia, including

---

1. The first 44 counts of the indictment charge the defendants with the making and submission, or the aiding and abetting thereof, of 22 consecutive monthly U. S. Department of Housing and Urban Development ("HUD") reports, containing false statements with respect to the units at the Allegheny Arms/Allegheny Court Apartments in Philadelphia, Pennsylvania, in violation of 18 U.S.C. §§ 1010, 2. The indictment charges Ginsberg and Krik in Count 45, and Ginsberg alone in Count 46, with obstruction of justice by attempting to influence a witness subpoenaed to appear before the grand jury, in violation of 18 U.S.C. § 1503. Count 47 of the indictment charges each defendant with conspiracy to knowingly and willfully make and to aid and abet the making of materially false statements for the purpose of influencing HUD, in violation of 18 U.S.C. § 371. Finally, the indictment charges Ginsberg in Counts 48 through 55 with failure to file eight employer's quarterly tax returns, from April 1, 1975, to March 31, 1977, in violation of 26 U.S.C. § 7203.

the units at the Allegheny Arms/Allegheny Court Apartments. The indictment charges, *inter alia,* that Sherwood was reimbursed by HUD in the amount of approximately $194,000 for payments allegedly made by Sherwood to certain contractors and employees, such as Borish, Justice and Krik, when the services and supplies were allegedly either not performed or furnished or were allegedly performed or furnished in a manner materially different from that set forth in Sherwood's monthly requests for reimbursement and in the attached invoices and payroll vouchers.

*Motions to Dismiss the Indictment*

In support of his Fed.R.Crim.P. 12(b)(1) and 48(b) motion to dismiss the indictment, each defendant argues that there was an unnecessary one-year delay between the alleged commission of the offenses, which allegedly occurred between May, 1975, and February, 1977, and the return of the indictment by the grand jury in February, 1978, and that such delay has prejudiced defendants in the preparation of their defense, in violation of their constitutional rights to a speedy trial and due process of law. Specifically, Borish argues that, as a result of the pre-indictment delay, the physical evidence demonstrating that he in fact performed work and supplied materials is no longer available, and tnat the work completed in the apartment units has deteriorated during the occupation of the premises by tenants over the past two years. Ginsberg contends that, as a result of the delay, he may be unable to locate witnesses, records or other physical evidence which would exculpate him from the charges. Further, Ginsberg argues that he cannot properly rebut the charges because of the transient nature of the relevant witnesses and the depreciable nature of the work performed and the materials supplied. Justice argues that he cannot recall the names of relevant witnesses or the exact duties he performed for Sherwood between March, 1975, and March, 1977. Krik argues that the indictment could have been returned by the grand jury as early as July, 1977, in view of the Government's alleged knowledge of an independent tax investigation of Krik being conducted by the Internal Revenue Service in January, 1977. In response, the Government argues that the Sixth Amendment right to a speedy trial does not apply until after the filing of a formal indictment, and that the Fifth Amendment right to due process is not violated by the types of prejudice which the defendants argue has inured to them as a result of the asserted pre-indictment delay.

■ First, with respect to a speedy trial claim based upon pre-indictment delay, Fed.R.Crim.P. 48(b) provides that, in post-arrest situations where a defendant has been held to answer to the district court, the court may dismiss the indictment if there is unnecessary delay in presenting the charge to a grand jury or in bringing a defendant to trial. *United States v. Lovasco,* 431 U.S. 783, 789 n. 8, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 319, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The Supreme Court has held that a lengthy pre-indictment delay is irrelevant to the application of the speedy trial clause of the Sixth Amendment because only a formal indictment or information, or the actual restraints imposed by arrest and holding to answer a criminal charge, engage the particular protections of that provision. *United States v. Marion, supra,* 404 U.S. at 320, 92 S.Ct. 455. Second, with respect to a due process claim based upon pre-indictment delay, the court must consider the reasons for the delay as well as the prejudice to the accused. *United States v. Lovasco, supra,* 431 U.S. at 790, 97 S.Ct. 2044. Investigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused. *Id.* at 795, 97 S.Ct. 2044. The Supreme Court held in *Lovasco* that prosecution of a defendant following investigative delay, wherein the prosecutor refuses to indict a defendant until he is satisfied that he is able to establish a defendant's guilt beyond a reasonable doubt, does not deprive the defendant of due process even if his defense might have been somewhat prejudiced by the lapse of time,

because investigative delay actually embodies the concept of fundamental fairness inherent within the constitutional guarantee of due process. *Id.* at 791, 796, 97 S.Ct. 2044; *see United States v. Marion, supra,* 404 U.S. at 324–325, 92 S.Ct. 455, and *United States v. Frumento,* 405 F.Supp. 23, 28 (E.D.Pa.1975), *aff'd mem.,* 559 F.2d 1209 (3d Cir. 1977). Our task is to determine whether compelling the defendants in this case to stand trial would deprive them of their Sixth Amendment right to a speedy trial or of their Fifth Amendment right to due process because of the delay in the Government's return of the indictment. *See United States v. Lovasco, supra,* 431 U.S. at 790, 97 S.Ct. 2044; *United States v. Marion, supra,* 404 U.S. at 326, 92 S.Ct. 455.

In this case, we hold that neither the defendants' Sixth Amendment right to a speedy trial nor their Fifth Amendment right to due process of law has been violated by any pre-indictment delay. First, because the pre-indictment delay in this case did not follow an arrest, the Sixth Amendment and Fed.R.Crim.P. 48(b) clearly do not support the defendants' speedy trial claims. Second, we find, on the basis of the pleadings before us, that none of the defendants has met his burden of establishing that the alleged pre-indictment in this case resulted from the prosecutor's intentional delay in presenting the indictment to the grand jury so as to gain a tactical advantage over him rather than from the prosecutor's necessary and reasonable investigation of the facts and circumstances supporting the indictment, and that none of the defendants has met his burden of establishing that any prejudice allegedly inuring to him as a result of this delay amounts to a denial of due process. In their arguments based upon due process grounds, the defendants do not allege prosecutorial misconduct which would reflect a specific intent by the Government to harass the defendants or to place them at a tactical disadvantage. In light of the nature of this case—namely, a conspiracy to defraud, over a period of almost two years, a large federal agency by the use of numerous documents containing allegedly false statements—and in light of the lack of any allegation that the pre-indictment delay was the result of tactical rather than investigative delay, we find at this time that the defendants have failed to establish a denial of their due process rights as a result of pre-indictment delay. Further, although events at trial may demonstrate actual prejudice, we find at this time that defendants' claims of substantial prejudice to their right to a fair trial are speculative and premature and, therefore, are insufficient to support a motion to dismiss. Allegations of dim memories, inaccessible witnesses and lost evidence are insufficient, without more, to demonstrate that the defendants cannot receive a fair trial or to justify dismissal of the indictment. *United States v. Marion, supra,* 404 U.S. at 325–326, 92 S.Ct. 455. Having considered both the nature of the pre-indictment delay and the consequential prejudice alleged by defendants, we hold that there was no violation of defendants' Fifth Amendment right to due process of law. Therefore, the defendants' motions to dismiss the indictment, on the grounds that their Sixth Amendment right to a speedy trial or their Fifth Amendment right to due process has been violated by pre-indictment delay, will be denied.

*Motions for Severance*

Borish, Justice and Krik filed motions, pursuant to Fed.R.Crim.P. 12(b)(5) and 14, seeking relief from the alleged prejudicial joinder of defendants for trial. Borish and Krik argue that a severance of defendants is warranted in this case because the statements of codefendants may be used against them by the Government at trial, and because each defendant may be prohibited from calling a codefendant as a defense witness because such codefendant may exercise his constitutional right not to testify at trial. Further, Borish and Krik argue that a joint trial will subject them to "guilt by association" because their roles in the alleged conspiracy were small, and because most of the evidence at trial will be introduced against Ginsberg and Justice. Likewise, Justice argues that, because his al-

leged involvement was limited, most of the evidence at trial will not be relevant or admissible against him, and that a separate trial is required to minimize the risks of prejudice and guilt by association. In response, the Government argues that defendants' allegations are insufficient to warrant a severance because a prosecutor may introduce into evidence the statements of codefendants, and because the defendants have failed to demonstrate either the likelihood of a codefendant testifying or the degree to which such testimony would be exculpatory. The Government also argues that a joint trial will not subject Borish, Justice and Krik to prejudicial guilt by association with Ginsberg because each defendant has been charged with participation in a conspiracy to defraud HUD.

Fed.R.Crim.P. 14 provides, in pertinent part, that if it appears that a defendant or the Government is prejudiced by a joinder of offenses or defendants in an indictment, the court may order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires. Relief from prejudicial joinder under Rule 14 is within the discretion of the trial court. *United States v. Somers,* 496 F.2d 723, 730 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). This Court continues to support the general rule that defendants jointly indicted shall be tried together in the absence of a clear showing that a defendant will be so severely prejudiced by a joint trial that it will deny him the right to a fair trial. *United States v. Cohen,* 444 F.Supp. 1314, 1318 (E.D.Pa.1978), *citing United States v. Frumento,* 409 F.Supp. 143, 144 (E.D.Pa.1976), *aff'd,* 563 F.2d 1083 (3d Cir. 1977), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1258, 55 L.Ed.2d 776 (1978). The primary consideration in the court's determination of the existence of prejudice to a defendant is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to the separate de-

fendants in view of its volume and limited admissibility. *Id.* at 730. Speculation that the trial jury will not follow the instructions of the Court with respect to compartmentalizing the evidence does not justify a severance under Rule 14. *United States v. Cohen, supra,* 444 F.Supp. at 1317–1318; *see United States v. Homer,* 545 F.2d 864, 868 n. 11 (3d Cir. 1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2673, 53 L.Ed.2d 270 (1977). Allegations of genuine prejudice must be considered together with the desirability of joint trials, particularly where the defendants are charged with conspiracy. *United States v. Segal,* 534 F.2d 578, 583 (3d Cir. 1976). More specifically, we must analyze the allegations of Borish, Justice and Krik with respect to their claim of the prejudice which will result to them from a joint trial in light of the following general standards: First, the Government's use at trial of the statements of a defendant is insufficient to warrant a severance of defendants for trial because the Government is required to remove references to other defendants which appear in the statement.[2] *United States v. Segal, supra,* 534 F.2d at 583, *discussing Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Second, in determining the necessity of a severance where a defendant argues that he will be unable to call a codefendant to testify in his behalf at a joint trial, courts have emphasized the following factors: (1) the likelihood that a codefendant would testify; (2) the degree to which such testimony would be exculpatory; (3) the degree to which the testifying codefendants could be impeached; and, (4) judicial economy. *United States v. Boscia,* 573 F.2d 827, 832 (3d Cir. 1978). Bare assertions that a codefendant will testify are insufficient to warrant a severance, *Id.* at 832, because the constitutional right of a defendant not to testify at the behest of a codefendant remains absolute despite severance of the defendants for trial. *United States v. Fru-*

---

**2.** Fed.R.Crim.P. 14 also provides an additional protection for defendants at a joint trial in that the court, in ruling on a motion by a defendant for severance, may order the Assistant United States Attorney to deliver to the court for *in camera* inspection any statements or confessions made by the defendants which the Government intends to introduce at trial.

*mento, supra,* 405 F.Supp. at 31. Third, a defendant is not entitled to a severance merely because the evidence against a codefendant is more damaging than the evidence against him, *United States v. Dansker,* 537 F.2d 40, 62 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977), or because he alleges the possibility of guilt by association with a codefendant, *United States v. Frumento, supra,* 405 F.Supp. at 31.

■ In this case, we find that Borish, Justice and Krik have failed to clearly show that he will be so severely prejudiced by a joint trial that it will deny him the right to a fair trial. First, we are satisfied that the defendants will not be prejudiced by the possible use at trial of the statements of a particular defendant because of the Government's representations of an intent to limit the use of such statements.[3] Second, defendants have not made a strong showing of the likelihood that their codefendants would testify. Although Borish stated to the Court at oral argument, held on April 20, 1978, that the other defendants had indicated a willingness to testify in his behalf if there were separate trials, we are not satisfied that any codefendant would not continue to invoke his Fifth Amendment privilege against self-incrimination. We find Borish's assertion, without more, that his codefendants will testify to be insufficient to demonstrate a likelihood that they will testify in his behalf. We find further that the showing as to the exculpatory nature of the desired testimony is also insufficient. None of the defendants has demonstrated that the testimony of a codefendant will exculpate him; indeed, Borish anticipates that his own testimony may adversely affect one or more of his codefendants. Further, there has been no showing of the degree to which a codefendant could be impeached. Therefore, we find that considerations of judicial economy outweigh any alleged prejudice which might possibly

result from the inability of Borish, Justice or Krik to call a codefendant to testify in his behalf at trial. Third, in view of the instructions that will be given to the jury to compartmentalize the evidence, we find that Borish, Justice and Krik will not be prejudiced at a joint trial merely because the evidence against Ginsberg may be more damaging than that introduced against them. The alleged scheme in this case is not so complex, nor are the alleged conspirators so numerous, that the charges and evidence against each defendant cannot be kept separate in the minds of the jurors. Further, because each defendant is charged in Count 47 with conspiracy, we find that Borish, Justice and Krik will not be prejudiced by the possibility of guilt by association with Ginsberg or with each other. Therefore, in the absence of a clear showing of severe prejudice which will deny him a right to a fair trial, the motions of Borish, Justice and Krik for relief from prejudicial joinder, pursuant to Fed.R.Crim.P. 12(b)(5) and 14, will be denied.

Ginsberg's motion for a severance alleges a misjoinder of offenses under Fed.R. Crim.P. 8(a). Ginsberg argues that Counts 48 through 55 of the indictment, which charge him with the willful failure to file eight quarterly withholding returns for salaries paid to employees between April 1, 1975, and March 31, 1977, do not relate to the other 47 counts of the indictment, which he argues involve a separate and distinguishable series of alleged crimes. In response, the Government argues that there is a specific factual nexus between the Title 26 counts charging tax violations and the Title 18 counts charging, *inter alia,* false statements violations, because the FHA Form No. 2700b submitted by Ginsberg to HUD reflected on its face that Ginsberg was writing checks on the HUD trustee account for "payroll deductions."

---

**3.** The Government avers that, because of the practice of each defendant in this case to exercise his Fifth Amendment right against self-incrimination when questioned by federal agents, there will be few statements of a defendant

offered into evidence. Further, the Government represents that it will "sanitize" the statement of a defendant, in accordance with *Bruton, supra,* and its progeny, in order to remove any references to his codefendants.

Fed.R.Crim.P. 8(a) provides that two or more offenses may be charged in the same indictment, in a separate count for each offense, if the crimes charged are of the same or similar character, or are based upon the same act or transaction or series of acts or transactions, connected together or constituting parts of a common scheme or plan. The primary purpose of joinder of offenses under Rule 8(a) is to serve the goals of trial economy and convenience by insuring that the acts or transactions supporting the crimes charged need only be proved once. *Baker v. United States,* 131 U.S.App.D.C. 7, 401 F.2d 958, 971 (1968), *cert. denied,* 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970); *cf. United States v. Roselli,* 432 F.2d 879, 900–901 (9th Cir. 1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971).

In this case, the Title 26 tax offenses and the Title 18 offenses are properly joined under Fed.R.Crim.P. 8(a) because the offenses are based upon two or more acts or transactions constituting part of a common scheme to defraud HUD. We are satisfied with the Government's representations that there is a common nexus of proof [4] such that the acts or transactions supporting both the Title 26 tax violations and the Title 18 offenses need only be proved once. Because we find that the Title 26 and Title 18 offenses in this case are properly joined under Fed.R.Crim.P. 8(a), Ginsberg's motion to sever the tax counts from the indictment, pursuant to Fed.R.Crim.P. 12(b)(2), will be denied.

*Motions to Regulate the Order of Proof*

Borish, Justice and Krik argue that the Court must regulate the order of proof by directing the Government to prove the existence of a conspiracy by independent evidence before it offers evidence of any of the acts, or oral or written statements, of the alleged coconspirators. In response, the Government argues that the order of proof at trial should not be regulated because the trial court has the discretion to first admit evidence concerning the acts and statements of coconspirators before it admits evidence of the connection of the acts and statements to the existence of a conspiracy.

The order in which parties will adduce proof at trial is vested in the discretion of the trial judge. *Geders v. United States,* 425 U.S. 80, 86, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). In a trial involving a conspiracy, statements by a coconspirator made in furtherance of a conspiracy are not hearsay and are admissible against all coconspirators. *United States v. Graham,* 548 F.2d 1302, 1308 (8th Cir. 1977); Fed.R.Evid. 801(d)(2)(E). Although the Government's proof at trial must show that a conspiracy existed between the declarant and the defendants, there is no requirement that the Government prove the existence of the conspiracy before offering extrajudicial statements into evidence. *Id.* at 1308. These statements may be conditionally admitted into evidence subject to a demonstration, as shown by subsequent, independent proof, of their connection with the conspiracy. *Id.* at 1308 (citations omitted); Fed.R.Evid. 104(b).

In this case, we hold that the Government need not prove the existence of a conspiracy before it offers into evidence the statements of a defendant. Such statements may be conditionally admitted into evidence, pursuant to the Federal Rules of Evidence and subject to a subsequent demonstration of their connection, by independent proof, to the existence of the conspiracy, as charged in Count 47 of the indictment. Therefore, the motions of Borish, Justice and Krik to regulate the order of proof, pursuant to Fed.R.Crim.P. 12(b), will be denied.

An appropriate Order will be entered.

---

4. The Government contends that the evidence to prove both the false statements counts and the tax counts will be that, instead of depositing monies supposedly withheld from his employees in a separate bank account and subsequently submitting them to HUD, Ginsberg deposited the proceeds from the "payroll deductions" into one of his personal accounts without forwarding such funds to the Government.