## UNITED STATES of America

v.

## Earl STOUT and Peter J. Serubo.

### Crim. No. 80–00110.

United States District Court,
E. D. Pennsylvania.

Sept. 30, 1980.

See also, D.C., 460 F.Supp. 689.

Peter F. Vaira, U. S. Atty., Peter J. Smith, Luther E. Weaver, III, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

Harvey A. Sernovitz, Philadelphia, Pa., for Serubo.

Richard A. Sprague, and Robert E. Madden, Philadelphia, Pa., for Stout.

## MEMORANDUM

JOSEPH S. LORD, III, Chief Judge.

Serubo has moved for a severance under Fed.R.Crim.P. 8(b) because of alleged misjoinder, or under Fed.R.Crim.P. 14 because of alleged prejudicial joinder. *See United States v. Heldon,* 479 F.Supp. 316, 321–22 (E.D.Pa.1979). He has also moved to dismiss Counts 44–48.

*A. Rule 8(b) Motion*

Fed.R.Crim.P. 8(b) permits the joinder of defendants if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." If the evidence to be adduced at trial "connects each of the defendants to an overall general scheme, joinder is proper." *United States v. Heldon,* 479 F.Supp. at 322, *citing United States v. Kenny,* 462 F.2d 1205, 1216 (3d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); *see also United States v. Somers,* 496 F.2d 723, 729 (3d Cir. 1974). Serubo, however, argues that the indictment fails to connect the two defendants to any common plan or design. Indeed, some of the counts are directed at only one of the defendants, *e. g.,* Counts 36–48 (Stout), Counts 49–50 (Serubo); and Count 1 (the RICO Count, 18 U.S.C. § 1962(c) (1970)) recites "a litany of transactions and episodes, some of which appear to involve only one defendant or the other." Motion of Defendant Peter J. Serubo for severance at 2. Moreover, Serubo argues, the indictment does not charge that he shared in any of the alleged kickbacks received by Stout. In fact, contends Serubo, there is no allegation that Serubo in any way assisted Stout in the latter's various fraudulent breaches of his fiduciary obligation. In short, then, Serubo views the indictment as an assortment of isolated allegations, without any common thread linking both defendants to any one criminal episode.

The indictment does detail a very complicated series of transactions. However, I find that there is an underlying common denominator. The indictment charges that Stout fraudulently exploited his power as President of District Council 33 and related entities to benefit himself and, *inter alii,* Serubo. For instance, it was part of the scheme that Serubo's businesses (The Thomas Peters Management Co. and Dental Care Programs, Inc.) received $620,000 from the American Health Plan (AHP) in part

for services rendered by the Peters Co., which both Stout and Serubo knew to be unnecessary, Count 1, ¶¶ 25–26; that Stout allowed Serubo to hold himself out as an agent of District Council 33 during contract negotiations between District Council 33 and Kennedy Hospital (a District Council 33 entity), and the Ducat Co. and AHP, thereby enabling Serubo to demand kickbacks from Ducat and AHP, Count 1, ¶ 24; that Serubo placed Stout's son, William, on the payroll of the Peters Co. although William Stout did little, if any, work, Count 1, ¶ 28; that Stout received $15,000 from a bank account controlled by Serubo and his wife, Count 1, ¶ 32; that Stout directed the payment of approximately $40,000 to the Peters Co. in connection with the publication of a District Council 33 newsletter without full disclosure of all material terms of the agreement, although the amount paid was far in excess of the value of the services actually rendered, Count 1, ¶ 34; and that Stout directed the payment of approximately $14,000 by Kennedy Hospital to the Peters Co. for accounting services although Stout knew that these services had already been performed, Count 1, ¶ 38. There are other allegations in Count 1 which further describe a pattern of shared benefits between the two defendants. It is not necessary to detail them, for it is plain that the Government, however inartfully, has connected Serubo and Stout to an overall general scheme involving the misuse of Stout's fiduciary obligation to demand and obtain kickbacks and unnecessary payments of money and goods.

Defendant correctly notes that some alleged episodes involved isolated payments or kickbacks to one defendant without the apparent assistance or knowledge of the other defendant. For example, Stout allegedly received a television set from Globe Sales Co., apparently in return for awarding Globe a contract for the supply of goods and services to Kennedy Hospital. Count 1, ¶ 22. *See also* Count 1, ¶¶ 23 (Stout), 27 (Serubo). However, Rule 8(b) joinder does not require participation by each co–defendant in every aspect of the scheme, *United States v. Mandel*, 415 F.Supp. 1033,

1050 (D.Md.1976), *aff'd in part, vacated and remanded in part*, 591 F.2d 1347 (4th Cir. 1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980), so long as each co–defendant participated in "the same series of acts or transactions." *United States v. Richey*, 457 F.2d 1027 (3d Cir. 1972); *United States v. Heldon, supra; United States v. Cohen*, 444 F.Supp. 1314 (E.D.Pa. 1978).

■ The Government has alleged an overall fraudulent scheme in which the co–defendants shared benefits from interconnected transactions. Having alleged a common link, severance under Fed.R.Crim.P. 8(b) is not required. It matters not that there is no conspiracy count in the indictment. *United States v. Kulp*, 365 F.Supp. 747 (E.D.Pa.1973). Serubo's Rule 8(b) motion is accordingly denied.

B. *Rule 14 Motion*

■ Fed.R.Crim.P. 14 provides relief from prejudicial joinder. *United States v. Cohen, supra.* Such a motion is directed to the discretion of the district court. *United States v. Armocida*, 515 F.2d 29 (3d Cir. 1975); *United States v. Somers, supra; United States v. Camiel*, Crim. No. 80–161, slip op. at 5 (E.D.Pa. Sept. 17, 1980). The "general rule [is] that defendants jointly indicted should be tried together, in the absence of a clear showing that a defendant will be so severely prejudiced by a joint trial that it will in effect deny him the right to a fair trial." *United States v. Cohen*, 444 F.Supp. at 1318, *citing United States v. Frumento*, 409 F.Supp. 143, 144 (E.D.Pa. 1976), *aff'd*, 563 F.2d 1083, 1092 n.19 (3d Cir. 1977). *See United States v. Boyd*, 595 F.2d 120 (3d Cir. 1978). Ultimately, then, decision under Rule 14 involves balancing the possibility of prejudice to the defendant versus the governmental interest in trial economy, convenience and the efficient administration of justice. *United States v. DeLarosa*, 450 F.2d 1057 (3d Cir. 1971); *United States v. Borish*, 452 F.Supp. 518 (E.D.Pa.1978); *United States v. Kulp, supra.*

Serubo argues that a joint trial will prejudice him in two ways. First, he asserts, the jury will be confused by the "inherent difficulties [of] comprehending the Government's theory of the case with regard to the RICO Count," Memorandum of Law in Support of Defendant Peter J. Serubo's Motion for Severance at 10, a confusion which will not be cured by the jury instructions. I agree that this case is not a simple garden variety fraud case. But I have no doubt that its many complexities will be simplified and tailored by the time the case gets to the jury–in part from the anticipated efforts of counsel and in part from my jury instructions. "Speculation that the trial jury will not follow the instructions of the Court with respect to compartmentalizing the evidence of the [various] counts of the indictment will not justify a severance under Fed.R.Crim.P. 14." *United States v. Cohen*, 444 F.Supp. at 1317.

▉ Defendant also contends that a joint trial will inevitably create a "spillover" of incriminating evidence, causing the jury "to cumulate the evidence of the various crimes charged and find guilt when, if considered separately, they would not so find." Memorandum of Law in Support of Defendant Peter J. Serubo's Motion for Severance at 11. This contention is likewise speculative. First, conspiracy principles apply to multi–defendant mail fraud schemes even though a conspiracy was not formally charged in the indictment. *See, e. g., United States v. Knippenberg*, 502 F.2d 1056, 1059 (7th Cir. 1974) (citing cases); *United States v. Schall*, 371 F.Supp. 912, 928–29 (W.D.Pa.), aff'd sub nom. *Appeal of Nikolich*, 503 F.2d 1399 (3d Cir. 1974), cert. denied sub nom. *Torbich v. United States*, 420 U.S. 932, 95 S.Ct. 1137, 43 L.Ed.2d 406 (1975). Thus, each act of Stout in furtherance of the scheme is imputed to Serubo. "Therefore, joinder is potentially less harmful in this trial than in others." *United States v. Bloom*, 78 F.R.D. at 613. Second, Serubo has again ignored the curative effect of jury instructions:

[W]hile the possibility of "guilt by association" exists in a joint trial, this does not afford a ground for severance ... [As the Supreme Court has explained:] "This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying the different crimes against the same person, and connected crimes against different defendants, in the same trial is a valid governmental interest." *Spencer v. Texas*, 385 U.S. 554, 562, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967).

*United States v. Barber*, 296 F.Supp. 795 (D.Del.1969), aff'd in part, rev'd in part on other grounds, 442 F.2d 517 (3d Cir.), cert. denied, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971), cited in *United States v. Frumento*, 409 F.Supp. at 148. See also *United States v. Bloom*, 78 F.R.D. at 613. The possibility that some evidence will be admitted against Stout which will be inadmissible against Serubo is not sufficient to require separate trials, for such a prospect "is a feature of all joint trials." *United States v. Heldon*, 479 F.Supp. at 322, quoting *United States v. Kenny*, 462 F.2d 1205, 1218 (3d Cir.), cert. denied, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972).

Serubo's argument in support of his Rule 14 motion proves too much. Although this case will not be simple to try, it is less complex than other criminal actions in which the denial of a severance was held proper. *See, e. g., United States v. Bernstein*, 533 F.2d 775 (2d Cir.), cert. denied, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976) (eight month trial involving nine defendants and sixty–five counts); *United States v. Blitz*, 533 F.2d 1329 (2d Cir.), cert. denied, 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 79 (1976) (five week trial involving five defendants and twenty–five counts; violations of federal securities laws and the mail fraud statute); *United States v. Sperling*, 506 F.2d 1323 (2d Cir. 1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975) (four week trial involving fourteen defendants and eleven counts; violations of federal narcotics laws); *United States v. Somers, supra* (three month trial involving

seven defendants and twenty–six counts; violations of the Hobbs Act).

■ Indeed the complex character of a case is not, by itself, a sufficient basis upon which to grant a severance. If Serubo's Rule 14 argument were to prevail, I would be granting a severance solely because of the complex nature of the proof that will be presented at trial, but this is not the criterion. Otherwise Rule 14 motions would always succeed if the indictment were "complex enough." Serubo's showing of possible prejudice is not enough. His motion for relief from prejudicial joinder by ordering a separate trial, pursuant to Fed.R.Crim.P. 14, will therefore be denied.

C. *Motion to Dismiss Counts 44–48*

■ Counts 44–48 of the indictment are directed against Stout. They allege violations of the mail fraud statute in connection with Stout's mailing of the AFSCME District Council 33 Reporter to the members of District Council 33. These counts incorporate by reference the forty-five paragraphs of Count 1. In particular, Count 1 ¶ 36 alleges that Stout approved the placement of free advertising for Serubo's business (the Serubo Cadillac Co.) in the District Council 33 newsletter. Here, then, is another interconnection between the co–defendants–another alleged instance of Stout's breach of fiduciary duty for the benefit of Serubo. Counts 44–48 thus allege activity that is part of the single fraudulent scheme. Serubo's motion to sever these counts of the indictment is therefore denied.